UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-81454-CIV-MARRA/JOHNSON

K.S.R. X-RAY SUPPLIES, INC., a Florida
corporation,

Plaintiff,

vs.

SOUTHEASTERN X-RAY, INC., a Georgia
corporation and TERRY GREENE, individually,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Plaintiff's Motion for Partial Summary Judgment as to Count I of the Complaint against Terry Greene and Motion for Default Final Judgment against Southeastern Xray, Inc. (DE 22). No responses to the motions have been filed.[1] The Court has carefully considered the motions and is otherwise fully advised in the premises.

**PARTIAL SUMMARY JUDGMENT MOTION**

I.  Background

The facts, as culled from affidavits, exhibits, answers, and reasonably inferred therefrom in the light most favorable for Defendant Terry Greene, for the purpose of this motion, are as follows:

Plaintiff K.S.R. X-Ray Supplies, Inc. ("KSR") is in the business of selling x-ray film, equipment and supplies to doctors and x-ray technicians who take, copy and read x-rays. KSR is

---

[1] On August 17, 2010, the Court issued a Notice of Summary Judgment to Terry Greene pursuant to Griffith v. Wainwright, 772 F.2d 822, 824 (11th Cir. 1988). (DE 24.)

based in Boca Raton, Florida. (Robert Katsoff Decl. ¶ 2, Ex. A, attached to DE 22; Compl. ¶ 8.) The principals of KSR, Robert Katsoff and Richard Simon, have been doing business together under the service mark KSR X-RAY℠ since the early 1990s. (Katsoff Decl. at ¶ 3; Compl. ¶ 9.) The mark KSR X-RAY℠ is an acronym made up of the initials of the principals' last names (K and S) and the shared initial of the principals' first names. Id. Prior to 1998, KSR X-RAY℠ was a trade name used by the principals for other companies they controlled to identify their x-ray film, equipment and supply business. Id. In 1998, Katsoff and Simon established KSR as a Florida corporation. KSR adopted the KSR X-RAY℠ mark that Katsoff and Simon were using to identify and promote their x-ray film, equipment and supply business, and KSR has continuously used the mark to identify and distinguish its business of selling x-ray film, equipment and supplies. Id. The KSR X-RAY℠ mark has attained distinctiveness in its relevant industry for providing quality x-ray film, equipment and supplies and its corresponding quality service. Id.

KSR's business is predominantly mail-order. (Katsoff Decl. ¶ 4; Compl. ¶10.) KSR has customers nationwide and has invested considerable sums marketing its x-ray film, equipment and supply business under the KSR X-RAY℠ mark to doctors, x-ray technicians, and health care companies throughout the United States. Id. In the course of that ongoing effort, KSR has developed substantial good will in the marketplace and KSR now owns valuable common-law rights in the KSR X-RAY℠ service mark. Id. The KSR X-RAY℠ service mark is a distinctive mark used to identify and promote KSR's x-ray film, equipment and supply business. Id.

From 1999 until today, KSR has maintained an active website for its business at the internet domain, KSRXRAY.COM. (Katsoff Decl. ¶ 5; Compl. ¶ 11; Screenshot of KSR's

webpage, Exhibit B, attached to DE 22.) The website features the KSR X-RAY℠ mark which was used to identify and promote KSR's x-ray film, equipment and supply business. Id.  KSR customers are able to locate the KSRXRAY.COM website by entering KSRXRAY.COM in the address line of their web browsers. Id.

Defendant Terry Greene ("Greene") is the Chief Executive Officer and owner of Southeastern X-Ray Inc.("SXI"), through which he competes with KSR in the business of selling x-ray film, equipment and supplies. (Katsoff Decl. ¶ 6; Compl. ¶¶ 12, 19.)  Greene conducts SXI's business through the website located at XraySUPERCENTER.COM. (Compl. ¶ 13.) Greene's additional domains include X-RAYSUPERCENTER.COM, SOUTHEASTERNX-RAY.COM, DISCOUNTX-RAY.COM, and several others, which are redirected, or "pointed" to the XRaySUPERCENTER main web site. (Compl. ¶ 13.)

On July 5, 2008, Greene, using a proxy service,[2] purchased the domain KSRX-RAY.COM and registered it in SXI's name. (Compl. ¶ 16; Domains By Proxy, Inc., Bates Stamped 000002, 000005, Ex. C., attached to DE 22.)  That same day, Greene, using the same proxy service also purchased the domain names MIDGEORGIAXRAY.COM and WOLVERINEX-RAY.COM. One day before, Greene purchased the domain name PACIFICNORTHWESTX-RAY.COM.  (Domains By Proxy, Inc. Bates Stamped 000002, 000006, 000008, 000009.)  Each of the domain names purchased by Greene is a misspelling of another actual x-ray supplies business. (Screenshots from Mid Georgia X-Ray Supply Inc.'s website, www.midgeorgiax-ray.com; Pacific Northwest X-Ray Inc.'s website, www.pnwx.com;

---

[2] A proxy service allow an individual to obtain a domain name without having his or her identity publicly disclosed. See Peterson v. National Telecomm. and Information Admin, 478 F.3d 626, 630 (4th Cir. 2007).

3

and Wolverine X-Ray Sales & Service, Inc.'s website, www.wolverinexray.com, Ex. "D," attached to DE 22.)

Greene admitted he registered the KSRX-RAY.com domain, with the intent that it be a misspelling of KSR's website address (KSRXRAY.com). He did this for the purpose of capturing KSR's customers who misspell KSR's domain name and thereby divert them to his website. (February 18, 2010 letter from Terry Greene, DE 18.) In or about July of 2008, after purchasing the KSRX-RAY.COM domain, Greene personally "pointed" it to his website, XraySUPERCENTER.COM. (Compl. ¶ 17.) Thus, when a potential KSR customer looking for KSR's web site mistakenly entered the KSRX-RAY.COM domain name as an Internet address, he or she was diverted, or "pointed" to XRaySUPERCENTER.COM. (Katsoff Decl. ¶ 7.) KSR thereby lost the opportunity to transact business with that customer. (Compl. ¶ 20; Katsoff Decl. ¶ 7.)

In or about July of 2008, Greene personally programmed specific meta tags[3] and keywords into the XRaySUPERCENTER.COM website designed to indicate to search engines and visitors that the XRaySUPERCENTER.COM website belonged to KSR. (Katsoff Decl. ¶ 8; Compl. ¶ 18.) The metatags and keywords that Green programmed into the XRaySUPERCENTER.COM website included KSRxray, KSRx-ray, KSRxray.com, and Kray.com. Id. Greene's use of and redirection of the misspelled domain names to his own company continued for over one year, until October 1, 2009, when he cancelled his ownership of the domain names after being served with process in this action. (Domains By Proxy, Inc. Bates

---

[3] Meta tags are codes that describe a web site's properties and contents. 3-11 Gilson on Trademarks § 11.07.

4

Stamped 000002.)  Greene used Defendant SXI's letterhead for the purpose of writing a letter to this Court. (February 18, 2010 letter from Terry Greene.)

KSR has suffered damages in Florida as a result of Greene's actions. (Katsoff Decl. ¶11; Compl. ¶ 21.)  KSR never authorized Greene or SXI to use the KSR mark or to register any domain name that includes the KSR mark.  (Katsoff Decl. ¶ 9; Compl. ¶ 22.) Greene and SXI are not otherwise affiliated or associated with KSR. Id.   Greene and SXI do not have any intellectual property rights or any other rights in the KSR X-RAY℠ mark. (Katsoff Decl. ¶ 10; Compl. ¶ 23.)

Plaintiff moves for summary judgment on count one of the Complaint; namely, that Greene violated the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA").

II. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the

absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."  Anderson, 477 U.S. 242, 249-50.

III.  Discussion

The ACPA, the cyberpiracy prevention section of the Lanham Act, 15 U.S.C. § 1125(d), makes a person liable for the "bad faith intent to profit" from a protected mark by using a domain name that is identical or confusingly similar. PetMed Express, Inc. v. Medpets.com, Inc., 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004).  Liability for federal cyberpiracy occurs when a plaintiff

6

proves that (1) its mark is a distinctive or famous mark entitled to protection; (2) the defendant's domain names are identical or confusingly similar to the plaintiff's marks and (3) the defendant registered the domain names with the bad faith intent to profit from them. Id.

In order to be entitled to the protections of the ACPA, a mark must be distinctive at the time of registration of the domain name. See 15 U.S.C. § 1125(d)(1)(A)(ii)(II). The element of the anti-cybersquatting claim that a mark is distinctive or famous is similar to the consumer confusion factor in a trademark infringement context in that a plaintiff must show that the mark is either inherently distinctive or is a descriptive mark that has acquired secondary meaning. Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001). Once a plaintiff has established that the mark is distinctive, and therefore protectable, the plaintiff must then prove that the defendant used a domain name that is identical or confusingly similar to the plaintiff's mark. 15 U.S.C. § 1125(d)(1)(A)(ii)(II). For example, a domain name that completely incorporates a mark into its domain name would likely confuse, mislead or deceive consumers into the mistaken belief that a registrant's website was endorsed by the trademark owner. Victoria's Cyber Secret v. V Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001). After establishing the distinctiveness of its mark and an identical or confusingly similar use, a plaintiff must demonstrate that the defendant had bad faith intent to profit from plaintiff's mark. 15 U.S.C. § 1125(d)(1)( A)(i). To determine whether a defendant possesses the required bad-faith intent to profit from a plaintiff's mark, courts consider nine factors:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i).

Here, the mark, KSR X-RAY℠ is an acronym made up of the initials of KSR's principals' last names (K and S) and the shared initial of the principals' first names. The mark, taken as a whole, does not suggest or describe the goods or services offered thereunder, namely x-ray supplies, films and equipment. As such, it is an arbitrary mark and is entitled to the greatest degree of protection. See Frehling Enterprises, Inc. v. International Select Group, Inc.,

192 F.3d 1330, 1335 (11th Cir. 1999) (an arbitrary mark is a word or phrase that bears no relationship to the product and is the strongest type of mark); Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Assoc., 651 F.2d 311, 315 (5th Cir. 1981) ("Sun Bank" is an arbitrary or fanciful mark when applied to banking services);[4] Victoria's Cyber Secret, 161 F. Supp. 2d at 1349 (holding the mark "Victoria's Secret," which does not suggest or describe the goods or services offered, was arbitrary.)  Notably, the record evidence shows that the Greene registered the infringing domain name in July of 2008, at a time the KSR X-RAY℠ was distinctive, by virtue of having been in business and on the internet for ten years.  Although the mark at issue is not registered, Plaintiff has continually used the KSR X-RAY℠ since 1988 to identify and promote the products that it sells and has come to symbolize goodwill and quality products and service in the x-ray industry.

The Court must next determine whether Greene used a domain name that is identical or confusingly similar to the mark KSR X-RAY℠.  The undisputed record evidence shows that Greene's website is KSRX-RAY.COM and Plaintiff's mark is KSRX-RAY.  In Victoria's Cyber Secret, the Court found that "consumers are likely to be confused, misled or deceived into the mistaken belief that [the registrant's] websites are endorsed by [the trademark owner]" where the domain names "completely incorporated" the mark into its domain names.  Victoria's Cyber Secret, 161 F. Supp. 2d at 1347.   Furthermore, Greene's registering of the domain name KSRX-RAY.COM is a misspelling of Plaintiff's website address, KSRXRAY.COM.  Such action is

---

[4] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

also prohibited under the statute. See Mastercard Int'l Inc.v. Yanda, No. 4:08-cv-565, 2009 U.S. Dist. LEXIS 116785, at *15 (N.D. Fla. Nov. 5, 2009) (finding the common misspellings of MasterCard's marks, such as <wwmastercard.com>, <matercards.com> is conduct prohibited under the ACPA). Based on the record evidence, the Court finds that Greene registered Plaintiff's exact mark as a domain and registered a misspelling of Plaintiff's web address. Hence, the Court finds that Plaintiff has satisfied this element of the ACPA.

Turning now to the bad faith factors, the Court begins by observing that the record is devoid of any evidence that Greene has any trademark or intellectual property rights in KSR X-RAY℠ or had any legitimate property interest at the time he registered the KSRX-RAY.COM domain. Next, the KSR X-RAY℠ was derived from the initials of KSR principals' last name shared initial of the principals' first names. The mark does not consist of or contain any variation of the legal name of Greene, or any other name used to identify him. Prior to registering the domain name in July of 2008, Greene never used the KSR's mark in connection with the bona fide offering of any goods or services prior to KSR's first use in 1998. Greene was using the domain name for a commercial purpose and there is no evidence that he was engaged in "fair use" of the mark. Greene admitted it was his intent to divert consumers who misspelled KSR's website address to his website in order to sell competing products. Greene's practice was to register misspellings of his competitors' trade names and point those domains to his website. Finally, the Court has already determined supra that KSR X-RAY℠ is distinctive within the meaning of 15 U.S.C. § 1125(c). Taking all these factors into consideration, the Court finds that Plaintiff has established the bad faith of Greene with respect to the registration and use of the KSRX-RAY.COM by Greene.

10

Because there are no issues of genuine material fact, the Court grants Plaintiff's motion for summary judgment against Greene on count one of the Complaint for his violation of the ACPA.

**MOTION FOR FINAL DEFAULT JUDGMENT AGAINST SXI**

In considering a motion for default judgment, the Court recognizes that a defaulted defendant is deemed to "admit[ ] the plaintiff's well-pleaded allegations of fact," but "is not held to admit facts that are not well-pleaded or to admit conclusions of law." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir.1975).[5]  "A default judgment is unassailable on the merits, but only so far as it is supported by well-pleaded allegations. Eagle Hospital Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009).  Thus, a default defendant may challenge the sufficiency of the complaint on appeal, even if he may not challenge the sufficiency of the proof. Id.

Taking this legal standard in mind as well as the entire court record, and noting the entry of default entered by the Clerk on February 16, 2010 (DE 15), the Court finds Plaintiff is entitled to a final default judgment against SXI.

**DAMAGES AND ATTORNEY'S FEES**

Under the ACPA, the Court may award the prevailing party damages "in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d). In addition, the Court may order the forfeiture or cancellation of the domain

---

[5] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

name or alternatively, transfer the domain name to the owner of the mark. See 15 U.S.C. § 1125(d)(1)(C) ("In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.")

Plaintiff requests the maximum statutory damages of $100,000.  Given that Defendants engaged in cybersquatting on a single domain name against this Plaintiff, and there is no evidence that the wrongful conduct is ongoing, the Court finds an award of $10,000 in statutory damages to be more appropriate. See, e.g., Taverna Opa Trademark Corp. v. Ismail, No. 08-20776-CIV, 2010 WL 1838384, at * 3 (S.D. Fla. May 6, 2010) (awarding $10,000 in statutory damages for use of single domain name); Victoria's Cyber Secret, 161 F. Supp. 2d at 1356 (awarding $10,000 for each of the four internet domain names registered);  cf. Transamerica Corp. v. Moniker Online Svcs., LLC, No. 09-60973-CIV, 2010 WL 1416979, at * 4 (S.D. Fla. Apr. 7, 2010) (awarding $100,000 for the use of single domain name where there was evidence of criminal intent, fraud and concealment). The Court further orders the transfer of the domain name KSRX-RAY.COM from Defendants to Plaintiff within 30 days of the date of Final Judgment.

The Court may award attorney's fees in "exceptional cases." 15 U.S.C. § 1117(a).  An exceptional case is "characterized as malicious, fraudulent, deliberate and willful" or where there is  "evidence of fraud or bad faith." Dieter v. B & H Indus. of S.W. Fla., Inc., 880 F.2d 322, 329 (11th Cir.1989); Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1169 (11th Cir.1982).  The decision to award attorney's fees is within the discretion of the court. Safeway Stores, 675 F.2d at 1169.  Here, the Court finds Plaintiff is entitled to reasonable

attorney's fees and costs. Defendants' conduct was intentional, willful and deliberate. Defendants' conduct renders this an exceptional case. To that end, Plaintiff shall submit supporting affidavits and records to allow the Court to make a determination as to the appropriate amount of the award.

**CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Plaintiff's Motion for Partial Summary Judgment as to Count I of the Complaint against Terry Greene and Motion for Default Final Judgment against Southeastern Xray, Inc. (DE 22) are **GRANTED.**

2) Based on Plaintiff's representation that it will dismiss the remaining counts of the Complaint upon entry of partial summary judgment, the Court orders Plaintiff to file its dismissal papers **no later than October 28, 2010.** Upon receipt, the Court will separately issue judgment for Plaintiff consistent with this Order.

3) Plaintiff shall file its motion for attorney's fees and costs **within 14 days of the date of entry of this Order.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 25th day of October, 2010.

_____
KENNETH A. MARRA
United States District Judge